**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
In re:                                                 :    Chapter 11
                                                       :
SVB FINANCIAL GROUP,                                   :    Case No. 23-10367 (MG)
                                                       :
              Reorganized                              :
              Debtor.¹                                 :
-------------------------------------------------------x
JOINT OFFICIAL LIQUIDATORS OF                          :    Adv. Proceeding No. 24-04014 (MG)
SILICON VALLEY BANK (IN OFFICIAL                       :
CAYMAN ISLANDS LIQUIDATION),                           :
                                                       :
              Plaintiff,                               :
                                                       :
       vs.                                             :
                                                       :
SVB FINANCIAL GROUP,                                   :
                                                       :
              Defendant.                               :
-------------------------------------------------------x
```

### JOLS' OPPOSITION TO SVBFT'S MOTION IN LIMINE

NOW COME Andrew Childe, Niall Ledwidge and Michael Pearson, in their capacity as joint official liquidation of Silicon Valley Ban (in Official Liquidation) (the "**JOLs**"), and submit this opposition to the Motion *in Limine* (the "**Motion**") of SVB Financial Trust ("**SVBFT**"), as successor-in-interest to SVB Financial Group (the "**Debtor**") seeking to exclude the expert testimony of Dr. Riz Mokal, the JOLs' foreign law expert ("**Dr. Mokal**").  The JOLs' Opposition is supported by the March 17, 2025 Declaration of Richard A. Bixter, Jr. (the "**Bixter Decl.**"), a copy of which is attached hereto.  In further support of their Opposition, the JOLs respectfully state:

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

**PRELIMINARY STATEMENT**

SVBFT's baseless motion, as well as its conduct during the parties' expert depositions, is eyebrow raising. The Court should deny the motion in its entirety and award any further relief that is just and proper.

Tellingly, SVBFT does not cite the rule governing determination of foreign law or otherwise refer to any relevant or controlling cases concerning the standards by which a Court evaluates the reports of foreign-law experts. The relevant rule is Fed R. Civ. P. Rule 44.1, made applicable in the bankruptcy court via Fed. R. Bankr. P. 9017. *See generally, In Re Celsius Network LLC,* 2025 WL 752368 at n. 8 (Bankr. S.D.N.Y. 2025) (Glenn, J.). That rule has been found to explicitly depart from the rules and precedent governing expert testimony (for example Fed. R. Civ. P. R. 702 and *Daubert*), but rather it contemplates written and oral testimony from experts, who are not required to meet any special qualifications. *Jonas v. Estate of Leven,* 116 F.Supp.3d 314, 330 (S.D.N.Y. 2015) (*citing Bigio v. Coca-Cola Co.,* 2010 WL 3377503 (S.D.N.Y. Aug. 23, 2020), *aff'd* 675 F.3d 163 (2d Cir. 2012) (internal quotes omitted)); *see also Winn v. Schafer,* 499 F.Supp.2d 390, 393 & n 28 (S.D.N.Y. 2007) (holding that English law expert testimony on matters of Cayman law must be considered because "…where Cayman Islands law is silent, Cayman Islands courts look primarily, to English common law for guidance"). Moreover, the reports and deposition testimony make clear that the proposition that Dr. Mokal is not a qualified expert on the subject of Cayman Islands law under *any* test is preposterous on its face.

SVBFT's motion also blatantly seeks to manufacture two issues that have no relevance or bearing on the testimony, and in fact arise from flaws in SVBFT's expert arguments. The first manufactured issue is that *neither* of the parties' experts have access to the privileged and sealed Cayman Grand Court files authorizing various litigation by the JOLs. This is hardly surprising

2

and no foreign law or standard expert has access to or considers privileged or work-product materials in relation to the testimony proffered. SVBFT has long known this was the case and itself sought and obtained access to the Cayman Court file via the same firm that employs SVBFT's expert. The materials underlying orders authorizing litigation are routinely sealed – because they contained privileged assessments of the case merits – in the Cayman Islands. This case is no different.

Nor does that fact have any bearing on the content of Cayman law as it relates to the question of the JOLs' standing to assert the various claims. Rather: (i) the issue arises solely in connection with SVBFT's impermissible (and surprising) attack on the *validity* of the Cayman Court's orders in this case to the effect that Justice Doyle was not aware of Cayman law or the content of his orders, (ii) the JOLs properly objected to deposition questions that attempted to invade such privilege and work product, and (iii) despite representing that it obtained the Cayman Court file, SVBFT now falsely contends harm arising from a publicly filed order, not explicitly discussed in Dr. Mokal's reports, which authorizes the JOLs to assert claims against FDIC-C that further undercuts the impermissible collateral attack on the Cayman Court orders – an argument that *only* SVBFT has made.

SVBFT has not been prejudiced, it is prejudiced toward the JOLs.[2] SVBFT's motion to exclude the reports and testimony of Dr. Mokal is wholly without merit, and such gamesmanship is prominently evident when Dr. Mokal's deposition transcript is reviewed. Rather, as both experts' depositions make clear, to the extent the parties' experts disagree as to the content of

---

[2] "Showing an unreasonable dislike for something or someone" https://dictionary.cambridge.org/us/dictionary/english/prejudiced#google_vignette. *See* Bixter Decl. at Exhibit A (Mokal Tr. pp. 42:11 to 43:9 (SVBFT counsel asking Dr. Mokal if he gives opinions on Cayman law to "somebody on the street").

3

Cayman law, Dr. Mokal's views are so clearly correct that SVBFT apparently felt it had no options but to file this meritless motion.

## OPPOSITION

### I. Dr. Mokal Is Undoubtedly Qualified as an Expert in Cayman Law

SVBFT seeks exclusion of Dr. Mokal as a Cayman law expert under FRE 702 and *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) on the grounds, *inter alia*, that Dr. Mokal is not licensed to practice law in and has never visited the Cayman Islands, and that none of his published writing addresses Cayman law. (Motion at pp. 2-3). Of course, that is not the standard. Rather, the standard for this Court's consideration of expert evidence on foreign law is governed by Fed. R.Civ. P. 44.1 and Fed. R. Bankr. P. 9017. There is no need for the JOLs to further recite the clearly governing law and precedent. But even apart from that, as this Court can make clear, by making this argument, SVBFT demonstrates a shocking misunderstanding of Dr. Mokal's standing[3] and scholarship[4] as well as the very nature of the English/Cayman common law system.

---

[3] Contrary to SVBFT's opportunistic argument, admission as a Cayman attorney is not the only way of obtaining expertise in Cayman law. In fact, it is expertise in English law that is the benchmark for expertise in Cayman law. This can be seen from the fact that the required qualification for appointment as a Judge of the Grand Court is qualification "to practise as a barrister or solicitor in England or in an equivalent capacity in a Commonwealth country approved by the Governor as having comparable standards for call or admission to practise and who has so practised for not less than then years." *See* Bixter Decl. at Exhibit B (Section 6 of the Grand Court Law (2015 Revision)) (emphasis added). Dr. Mokal meets these requirements, having been called to the English Bar in 1997 and having practised as a barrister since 2005. *See* Bixter Decl. at Exhibit C (Dr. Mokal curriculum vitae attached to his Opening Report). That he has not chosen to seek admission as a Cayman attorney no more undermines his standing as an expert in Cayman law than the same lack of Cayman attorneyship admission undermines the expertise of most of those appointed as Judges in the Cayman Islands. By way of example, Justice Segal, appointed to the Grand Court in 2015, and Justice Parkar, appointed in 2017, were both distinguished English lawyers at the date of appointment but neither had been admitted as a Cayman attorney. *See* https://judicial.ky/team/hon-justice-nicholas-segal/ (last accessed March 17, 2025) and https://judicial.ky/team/hon-justice-raj-parker/ (last accessed March 17, 2025). SVBFT's related argument that Dr. Mokal is not qualified as an expert witness because he is not King's Counsel or previously Queen's Counsel ("**KC**") is similarly misplaced. Again, the status of KC is one mark of expertise but it is not the only one. Six of the nine sitting Judges of the Grand Court have not been appointed KC. Only three current Judges of the Grand Court ever served as KC prior to appointment. *See* https://judicial.ky/grand-court-judges/ (last accessed March 17, 2025). In fact, the Chief Justice of the Cayman Islands is not a KC and was not licensed as a Cayman attorney at the date of her appointment. and https://judicial.ky/team/the-chief-justice-the-hon-justice-margaret-ramsay-hale-bsc-econlse-ll-b-uwi/ (last accessed March 17, 2025).

[4] SVBFT's argument that none of Dr. Mokal's extensive scholarship over his nearly thirty year career is relevant to Cayman law is surprising as well as wrong. This is readily apparent even from the textbooks cited by SVBFT's own

4

Via the very testimony by the two experts in this proceeding and via well-established federal precedent, SVBFG and this Court have been made well aware of the reasons why expertise in English law constitutes the benchmark for expertise in Cayman law. The Cayman Islands is one of the British overseas territories that fall under the English common law system. Cayman common law <u>is</u> English common law. *See* Bixter Decl. at <u>Exhibit A</u> (Mokal Tr. at p. 5:22 to 11:19

---

expert as "authoritative" and which Mr. Said says "the Cayman courts regularly refer to and follow." *See* Bixter Declaration at <u>Exhibit D</u> (Initial Said Report at Appendix 1, ¶ 7). Focusing <u>only</u> on the excerpts from such textbooks put in evidence by SVBFT's expert, <u>four of Dr. Mokal's publications</u>, each peer-reviewed and published in a highly distinguished law journal, are cited and discussed:

- "Priority as Pathology: The *Pari Passu* Myth" [2001] *Cambridge Law Journal* 581 addresses the nature and role of the pari passu principle in insolvency proceedings. *See* Initial Said Report, citing to *Goode on Principles of Corporate Insolvency Law*, at pp 122 and 123;

- "At the Intersection of Property and Insolvency: The Insolvent Company's Encumbered Assets" [2008] 20 *Singapore Academy of Law Journal* 495 and "Encumbered Assets and the Statutory Trust" (2008) 21 *Insolvency International* 129, both discussing the origin and nature of the statutory trust. *See* Initial Said Report, citing to *McPherson & Keay on The Law of Company Liquidation*, pp 347 and 349; and

- "What Liquidation Does for Secured Creditors, and What it Does for You" (2008) 71 *Modern Law Review* 699, analyzing the nature and functions of a winding-up proceeding. *See* Initial Said Report, citing to *Goode on Principles of Corporate Insolvency Law*, p 178.

Each of these sets of issues, where Cayman law is identical with or closely tracks English law, are relevant to the expert evidence proffered to this Court by Dr. Mokal. Other examples of relevant publications include, *inter alia*, 'The *Pari Passu* Principle in English Ancillary Proceedings: *Re Home Insurance Company*' (2005) 21(6) *Insolvency Law & Practice* 207, co-authored with Look Chan Ho, and *Financial Institutions in Distress: Recovery, Resolution, Recognition* (Oxford: Oxford University Press, 2023), co-authored with Prof. Ronald B Davis, Prof. Stephan Madaus, Monica Marcucci, Prof. Irit Mevorach, Justice Barbara Romaine, Prof. Janis Sarra, and Prof. Ignacio Tirado.

SVBFT makes a related argument that Dr. Mokal is not qualified because none of his scholarship has focused on the hyper-specific issue of a dispute between Cayman liquidators and a FDIC receivership. Given the extraordinary and first-of-its-kind fact scenario that resulted in appointment of the JOLs – Cayman depositors being prejudiced by the FDIC in its role as receiver – it is difficult to imagine *who* would qualify as a Cayman expert under SVBFT's impossible standard. While SVBFT's expert William Sebastian St. John Said has written on this issue, it is two articles found on his firm's website, neither peer-reviewed or subject to any other external measure of quality control, where Mr. Said speaks supportively of the JOLs' efforts and the Winding Up Order entered by Justice Doyle. *See* Bixter Decl. at <u>Exhibits E</u> and <u>F.</u>

The correct position is that, consistent with Cayman legal practice, Cayman courts would approach such a novel scenario with guidance from the jurisprudence of the English courts. This is common ground. *See* Said Initial Report at ¶ 75: "Given the novelty of this case from a Cayman perspective, reference to the more well-developed English jurisprudence (as well as that of other similar common law jurisdictions) is necessary"; and Said Initial Report at, §208(b) fn 87: "In the absence of local Cayman authority that directly addresses this point, the Cayman Court would very likely follow this longstanding English authority, being highly persuasive in the usual way in the Cayman Islands." And in this jurisprudence of the English courts, Dr. Mokal's expertise is beyond question.

(in defending his qualifications, Mokal testifying that "Cayman common law is English common law, barring some exceptional cases."). Cayman statutes are often based or modelled on their English counterparts, and even when they are not, are interpreted using the long-established English common law canons of statutory construction. The final appellate court of the Cayman Islands is the Judicial Committee of the Privy Council, which consists mostly of UK Supreme Court Justices. Many Cayman judges are English lawyers or judges, and Cayman courts routinely look to the jurisprudence of the English courts (as well as that of the other courts of the English common law system) for guidance and authority. There is no dispute among the Cayman law experts in this case, or anyone else with even a cursory understanding of the Cayman legal system, on these well-established points. *See* Bixter Decl. at Exhibit G (Mokal Chapter 15 Report ¶¶ 12-16); Exhibit D (Initial Said Report at Appendix 1 (setting forth the principles of the Cayman Islands legal system with relation to Cayman's position as a British overseas territory).

Dr. Mokal is eminently qualified as an expert in Cayman law, and has been accepted as such by Courts to whom he has provided expert opinion on Cayman law, in cases such as *In re Renren, Inc.*, Case No. 653594/2018 (New York Supreme Court) (accepting report co-authored by Dr. Mokal as expert evidence on Cayman Islands law). Dr. Mokal has co-authored written submissions to the Grand Court, such as in the case of *Re Ocean Rig UDW Inc* (FSD 100-103 of 2017, Grand Court of the Cayman Islands), in relation to a successful restructuring through schemes of arrangement. Most notably, in connection with the chapter 15 petition filed by the JOLs before this Court and the objection thereto by the FDIC, this Court accepted Dr. Mokal's expert report on Cayman law into evidence, and cited approvingly to Dr. Mokal's expertise in the Court's opinion denying chapter 15 recognition to the JOLs. *In re Silicon Valley Bank (Cayman Islands Branch)*, 658 B.R. 75, 91-92 (Bankr. S.D.N.Y. 2024) (noting agreement among Cayman

6

law experts that Justice Doyle entered a proper winding up order in relation to Silicon Valley Bank).[5] Dr. Mokal is undoubtedly qualified to provide expert testimony on Cayman law, and SVBFT's motion should be denied.

---

[5] SVBFT's effort to preclude Dr. Mokal's reports for lack of a reliable methodology and inconsistencies is equally unavailing. (Motion at pp. 3-5). <u>First</u>, SVBFT wildly misstates Dr. Mokal's so-called reliance on Scots law for the proposition that liquidators may act as agents of the estate's creditors. In setting out the relevant principles of agency law, Dr. Mokal cited and excerpted from six judgments of English courts and one of the Privy Council. *See* Bixter Decl. at <u>Exhibit H</u> (Mokal Opening Report at ¶¶ 92, 94-96)). In addition, Dr. Mokal cited two Scottish cases, one in which the Scottish court analyzed and summarized <u>English</u> as well as Scottish case law on the liquidator's status and the other in which the Scottish court referred to the <u>English</u> ancillary liquidators of BCCI acting as agents to the creditors of the Scottish ancillary winding-up estate of the same bank. *Id*. at ¶ 93.

<u>Second</u>, the issue regarding the hypothetical dissolution of Silicon Valley Bank is a red herring. While the reports and depositions revealed that the Cayman law experts have a disagreement as to whether the Grand Court may wind up a U.S. Bank which has been formally dissolved under applicable state law, that situation has not occurred, and Dr. Mokal's opinion that Justice Doyle entered a proper Winding Up Order is in no way predicated on the hypothetical dissolution of Silicon Valley Bank under California law. Rather, Dr. Mokal opines that the Winding Up Order would still be proper even in the event of corporate dissolution, because the Cayman statute authorizing the Grand Court to wind up a foreign corporation (1) requires only that the foreign corporation be registered in the Cayman Islands and (2) does not limit the Grand Court's winding-up jurisdiction in relation to a duly Cayman-registered foreign corporation that has previously been dissolved under the law of its incorporation, leaving the latter question to comity and to judicial discretion. *See* Mokal Opening Report at ¶¶ 16-30.

<u>Third</u>, despite the cherry-picked statements presented by SVBFT in the Motion, there is no inconsistency in Dr. Mokal's submissions in this case and the previous Chapter 15 case. Incredibly, SVBFT attempts to argue that Dr. Mokal's testimony during the Chapter 15 case, that Justice Doyle properly entered a Winding Up Order for an ancillary liquidation of Silicon Valley Bank, somehow binds Dr. Mokal to an opinion that Justice Doyle limited the JOLs' territorial reach to the Cayman Islands. Dr. Mokal has never provided such an opinion in the Chapter 15 case or anywhere else. To the contrary, he has explained that the terms of the order limiting the JOLs to "acting in respect of the assets and affairs of the Cayman Islands branch of [SVB] and its creditors" do not amount to limiting them to acting within the territorial limits of the Cayman Islands, for the obvious reason that the JOLs act "in respect of" such assets and affairs when they investigate the misapplication of such assets outside of the Cayman Islands and when they bring proceedings in the appropriate jurisdictions to recover such misapplied assets. See Bixter Decl. <u>Exhibit I</u> (Mokal Reply Report at ¶¶ 37-38).

The Cayman Winding Up Order commenced an ancillary liquidation of Silicon Valley Bank. Dr. Mokal has provided clear and consistent opinions that while it is often <u>impractical</u> for an ancillary liquidator to operate in jurisdictions other than the one in which they have been appointed, there is absolutely nothing that <u>prohibits</u> such actions under Cayman law (particularly in the unique circumstances of this case where Cayman creditors have been prejudiced). *See id.* at ¶¶ 18-20. In response to Mr. Said's initial report, Dr. Mokal notes the fundamental flaw in Mr. Said's opinion concerning ancillary liquidations:

> SWS-1 cites authority for the correct proposition that it is *often pointless or impractical* for liquidators appointed in an ancillary winding-up to seek to operate outside their home jurisdiction (hereafter, the '**inexpediency proposition**'). On the back of such authority, however, SWS-1 asserts, incorrectly, that ancillary liquidators are *not generally permitted* to operate outside their home jurisdiction (hereafter, the '**impermissibility proposition**'). This purported move from inexpediency to impermissibility is plainly fallacious (hereafter, the '**inexpediency / impermissibility fallacy**'). It is analogous to noting (correctly) that it is usually pointless and impractical to seek to memorise verbatim the entire text of the Companies Act, and on that basis, asserting (incorrectly) that it is generally or always impermissible to do so.

7

II. **SVBFT Improperly Seeks Privileged Documents Under Seal with the Grand Court**

SVBFT's attempt to exclude Dr. Mokal for "lack of disclosure" is an improper attempt by SVBFT to obtain the privileged and sealed portion of the docket in the SVB Cayman liquidation. To be certain, these sealed documents have never been shared with Dr. Mokal, and nothing in the opinions set forth in his reports or deposition testimony is predicated on review of sealed case files he has never seen. Rather, Dr. Mokal's opinions are predicated on the text of the various Cayman Orders winding up SVB and sanctioning claims against, *inter alia*, the Debtor, all of which Orders are public record.

SVBFT's argument is disingenuous. SVBFT and its expert are well-aware that portions of the Cayman docket are under seal and privileged, and Mr. Said's colleagues at Appleby petitioned for and obtained copies of the public court file from the Grand Court clerk. SVBFT's failure to mention the sealed nature of the case file in its Motion – instead attempting to characterize it as a "lack of disclosure" warranting Dr. Mokal's exclusion – is a complete misstatement of the facts that are well-known to SVBFT's counsel. *See* Bixter Decl. Exhibit A (Mokal Tr. 228:3 to 230:25 (Mokal testimony on reason for sealing Cayman court documents).

Further, while Dr. Mokal testified that he was unsure if the public Cayman Court orders concerning the SVB liquidation he reviewed were "attached" to his Report, they are expressly

---

*See* Mokal Reply Report at ¶ 5. There is no inconsistency here.

<u>Finally</u> and relatedly, SVBFT's argument that Dr. Mokal has somehow shied away from his support of Mr. Justice (later Lord) Millett and the decision in *Internation Tin Council* turns Dr. Mokal's evidence on its head. Dr. Mokal cites *Tin Council* multiple times in his Reply Report, including in particular for the proposition that while an ancillary liquidation order in principle has worldwide effect, the court making the order would often limit the ancillary liquidator's powers, in the sense of absolving the liquidator from culpability for not seeking to collect assets situate outside the jurisdiction, in recognition of the practical limitations on such actions abroad. *See id.* at ¶¶ 18-20. He also gives pages of testimony concerning how the *Tin Council* decision fully supports his opinions on the nature of ancillary liquidations. *See* Mokal Tr. at pp. 184-193 (detailed testimony by Dr. Mokal regarding *Tin Council* and the fatal flaws in Mr. Said's opinions).

8

cited throughout his Reports. *See* Mokal Initial Report ¶ 28; Mokal Reply Report at ¶ 39, 64-67. The notion that SVBFT had no notice that Dr. Mokal considered the Cayman Winding Up Order and the Order sanction the JOLs' litigation against the Debtor is simply not credible.[6]

Accordingly, there is absolutely no lack of disclosure which has occurred in connection with Dr. Mokal reports, and thus no prejudice could possibly be present under the standard set forth in *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 117 (2d Cir. 2020). The Motion should be denied in its entirety.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the JOLs respectfully request that the Motion be denied in its entirety, and that this Court enter any further relief that it deems just and proper.

Dated: New York, New York
March 17, 2025

                                                  Respectfully submitted,

                                                  HOLLAND & KNIGHT LLP

By:       */s/ Richard A. Bixter, Jr.*
           Richard A. Bixter, Jr., Esq. (*pro hac vice*)
           HOLLAND & KNIGHT LLP
           150 N. Riverside Plaza Suite 2700
           Chicago, Illinois 60606
           Telephone: 312-263-3600
           Email: richard.bixter@hklaw.com

---

[6] SVBFT's argument that the JOLs' counsel "ambushed" Mr. Said with a copy of a public November 2024 Grand Court Order is similarly without basis. Dr. Mokal's opinions in his reports are not based whatsoever on the November 2024 Sanction Order, and Mr. Said and Appleby have had regular access to the public docket in the Cayman docket including the public Orders.

Warren E. Gluck, Esq.
HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 513-3200
Email: warren.gluck@hklaw.com

*Counsel for the Joint Official Liquidators of Silicon Valley Bank (in Official Cayman Islands Liquidation)*

## **CERTIFICATE OF SERVICE**

I, Richard A. Bixter, Jr., an attorney, certify that on March 17, 2025, I caused the foregoing Opposition and supporting documents to be served on all parties registered to accept electronic service through the CM/ECF system by filing the same through the CM/ECF system.

/s/ Richard A. Bixter, Jr.